# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL ACTION |
| | ) | No. 12-20083-11-KHV |
| v. | ) | |
| | ) | CIVIL ACTION |
| PETER PARK, | ) | No. 16-2728-KHV |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's pro se Motion To Vacate Under 28 U.S.C. § 2255 (Doc. #2362) filed October 24, 2016. On December 30, 2016, the United States filed its response to defendant's motion. Response To Motion (Doc. #2380). For reasons stated below, the Court overrules defendant's motion and denies a certificate of appealability.

## Factual Background

On October 31, 2012, a grand jury returned an indictment which charged Peter Park and 42 other defendants with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine; to manufacture, to possess with intent to distribute and to distribute 1000 kilograms or more of marijuana and to maintain a drug-involved premises in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(vii), 846 and 856. See Sealed Superseding Indictment (Doc. #462), Count 1. The indictment also charged defendant with possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). See id., Count 101. On March 6, 2013, defendant pled guilty to Counts 1 and 101. See Plea Agreement (Doc. #882). On November 17, 2015, the Court sentenced defendant to 90 months in prison. See Minute Entry (Doc. #2206); see also Transcript Of Sentencing (Doc. #2240) filed

December 12, 2015. Daniel Ross represented defendant throughout the proceedings.

On October 24, 2016, defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. Doc. #2362. Liberally construed,[1] defendant asserts 21 claims. Claims one through five and eight through 15 assert that Ross provided ineffective assistance. Specifically, defendant claims ineffective assistance because Ross did not explain the proffer agreement to defendant (Claim 1); he did not follow through with government counsel on an oral agreement to replace the Section 924(c) conviction with a two-level sentence enhancement (Claim 2); he did not object to the proffer agreement as a coerced confession (Claim 3); he did not object to the conviction and sentence as a violation of defendant's right against self-incrimination (Claim 4); he did not protect defendant's speedy trial rights (Claim 5); he withdrew defendant's appeal (Claim 8); he did not secure defendant's release on bond (Claim 9); he coerced defendant to sign the plea agreement (Claim 10); he did not object to evidence unlawfully obtained from defendant's parents' house (Claim 11); he did not effectively challenge the four-level leader enhancement under U.S.S.G. § 3B1.1(a) (Claim 12); he allowed the prosecution to amend the plea agreement to increase the forfeiture amount (Claim 13); he did not ensure that the Court sentenced defendant when Assistant United States Attorney (AUSA) Mike Warner was lead prosecutor (Claim 14) and he advised defendant to plead guilty before he completed discovery (Claim 15).

In claims five, six and 16, defendant asserts prosecutorial misconduct. Specifically, defendant claims that the government violated the plea agreement (Claim 6), engaged in selective

---

[1] The Court liberally construes defendant's petition. In doing so, the Court will evaluate each claim contained in the 11 grounds for relief listed in his petition, even if one ground contains multiple claims. Doc. #2362. For example, defendant lists five instances of ineffective assistance under Ground One in his petition. Id. at 5. The Court analyzes each instance on its own as Claims one and 12 through 15.

prosecution (Claim 7) and failed to follow through on a binding contract (Claim 16). Additionally, defendant asserts that the Court erred because it did not hold the government to its oral agreement to withdraw the Section 924(c) conviction in exchange for a two-level enhancement (Claim 17); it convicted and sentenced defendant based, in part, on statements obtained in violation of his right against self-incrimination (Claim 18); it delayed defendant's sentencing in violation of his speedy trial rights (Claim 19); it accepted defendant's plea of guilty (Claim 20) and it allowed the government to use unlawfully obtained evidence from defendant's parent's house (Claim 21). Doc. #2362 at 1-16; see also Reply To Response To Motion (Doc. #2384) filed January 27, 2017 at 1-8.

## Analysis

The Court applies a stringent standard of review when analyzing Section 2255 petitions. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989).

**I.  Waiver Of Collateral Challenges (Claims 17-21)**

Courts generally enforce a knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence. United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001); United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998). The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver. The Court determines whether: (1) the disputed issue falls within the scope of the waiver; (2) the defendant knowingly and voluntarily waived his rights and (3) enforcement of the waiver would result in a miscarriage of justice. United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc). The government asserts that petitioner waived his

right to bring a Section 2255 petition and asks the Court to enforce the plea agreement. Doc. #2380 at 4-5.

      A.      Scope Of Waiver

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement. United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004); Hahn, 359 F.3d at 1328. The Court construes the plea agreement according to contract principles and in accordance with what a defendant would reasonably understand when he entered the plea. United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004). The Court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant. Hahn, 359 F.3d at 1343.

The plea agreement states in relevant part as follows:

> **14.** **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion under Fed. Rule of Civ. Pro. 60(b). In other words, the defendant waives the right to appeal the sentence imposed except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by Title 18, U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any

> subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

Doc. #882, ¶ 14. The plea waiver unambiguously includes the right to collaterally attack by Section 2255 petition any matter in connection with defendant's prosecution, conviction or sentence.

The plea agreement explicitly states that petitioner does not waive subsequent claims of ineffective assistance of counsel and prosecutorial misconduct. See Doc. #882, ¶ 14. Thus, as to claims one through 16, the Court overrules the government's request to enforce the waiver of collateral attacks. Claims 17 through 21, however, assert judicial error. The waiver encompasses defendant's claims of judicial error.

B.     Knowing And Voluntary Nature Of The Waiver

To ascertain whether defendant knowingly and voluntarily waived his rights, the Court evaluates the language of the plea agreement, plea petition and the Rule 11 colloquy. Hahn, 359 F.3d at 1325. The Court conducted a thorough inquiry at the plea hearing. At that time, defendant affirmed that he understood the charges against him, the maximum prison term of life, the rights which he was waiving and the factual basis for his plea. Defendant acknowledged that he understood the waiver of appeal and collateral challenges, that his plea was free and voluntary, that no one had forced or threatened him to enter it and that he was making a plea because he was in fact guilty as charged. Nothing in the record suggests that defendant unknowingly or involuntarily entered into the plea agreement or waived his post-conviction rights. In sum, the language of the plea agreement and the Rule 11 colloquy establish that defendant knowingly and voluntarily waived his rights.

### C. Miscarriage Of Justice

The Court must "determine whether enforcing the waiver will result in a miscarriage of justice." Hahn, 359 F.3d at 1327. This test is not met unless (1) the district court relied on an impermissible factor such as race; (2) defendant received ineffective assistance of counsel in conjunction with negotiation of the waiver; (3) the sentence exceeds the statutory maximum or (4) the waiver is otherwise unlawful because it suffers from an error that seriously affects the fairness, integrity or public reputation of judicial proceedings. Id. Defendant bears the burden of demonstrating that the waiver results in a miscarriage of justice. Anderson, 374 F.3d at 959.

Defendant does not argue that any of these factors are present in this case, and the Court finds that enforcement of the waiver does not implicate any of the four factors listed above. Defendant received a sentence of 90 months in prison, which is less than the minimum for his applicable guideline range and well below the statutory maximum of life in prison. Judgment (Doc. #2207) filed November 19, 2015; Presentence Investigation Report (Doc. #2058) filed September 29, 2015 at 80; see United States v. Green, 405 F.3d 1180, 1193-94 (10th Cir. 2005); United States v. Porter, 405 F.3d 1136, 1144 (10th Cir. 2005) ("statutory maximum" under Hahn refers to statute of conviction). Further, enforcement of the waiver as to collateral challenges does not seriously affect the fairness, integrity or public reputation of the proceedings. See United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005) (waiver of appellate rights enforced where sentence did not exceed statutory maximum and was based on judge-made findings). The Court finds that enforcing the waiver as to Claims 17 through 21 will not result in a miscarriage of justice.

## II. Ineffective Assistance Claims (Claims 1-5 and 8-15)

To establish ineffective assistance of counsel, defendant must show that the performance of counsel was (1) deficient and (2) caused prejudice – a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To establish counsel's deficient performance, defendant must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel performed "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988). The Court may determine the second element, prejudice, before analyzing counsel's performance. United States v. Jones, 852 F.2d 1275, 1277 (10th Cir. 1988). If the Court determines that the alleged error did not prejudice defendant, it does not need to consider counsel's performance. Id.

### A. Failure To Explain The Proffer Agreement (Claim 1)

Defendant argues that counsel provided ineffective assistance because he did not adequately explain the proffer agreement. See Doc. #2362 at 5. Defendant alleges that counsel told him that the proffer agreement prohibited the government from using defendant's incriminating statements against him, and that based on this advice, defendant signed the agreement. Id. Defendant now argues that counsel misunderstood the proffer agreement because it allowed the government to use defendant's incriminating statements at sentencing. Id. In particular, he asserts that Ross's

confusion concerning the agreement resulted in the Court overruling his objection that the presentence investigation report violated the proffer agreement.

Defendant's claim misconstrues the proffer agreement and the Court's findings at sentencing. Ross correctly advised defendant that the agreement did not allow the government to use his statements against him. Under the agreement, however, the government retained the right to use independent evidence derived from defendant's statements. Doc. #2240 at 15. Defendant may have been confused about the terms of the agreement, and Ross arguably could have dispelled his confusion. Defendant is a college graduate, however, and he was fully capable of understanding the basic terms of the proffer agreement. Doc. #2058, ¶ 447. Accordingly, he has not shown that Ross caused his confusion. Further, defendant cannot demonstrate prejudice because the government did not rely on his proffer statements. At sentencing, the Court found that the presentence report relied on independent information from a different witness. Doc. #2240 at 21. Defendant has not demonstrated a reasonable probability that absent deficient advice by counsel, he would have received a difference sentence. Thus, the Court denies relief on this ground.

      B.      <u>Failure To Follow Through With Oral Agreement (Claim 2)</u>

Defendant argues that counsel provided ineffective assistance because he failed to seek enforcement of an oral agreement between defendant and AUSA Jared Maag. <u>See</u> Doc. #2362 at 7. Defendant alleges that before a hearing with Magistrate Judge James P. O'Hara, AUSA Maag agreed to move to withdraw defendant's guilty plea under Section 924(c) (Count 101) in exchange for a two-point firearm enhancement on the conspiracy conviction (Count 1). <u>Id.</u> Defendant stated that he entered into this agreement on January 23, 2014 – more than six months after the Court accepted his knowing and voluntary plea of guilty to Counts 1 and 101.

The government denies that the agreement between defendant and AUSA Maag existed and states that Department of Justice policy requires all government agreements be reduced to writing. Doc. #2380 at 16-17. Because defendant fails to substantiate his allegation that he entered into the agreement, the Court cannot find that counsel performed deficiently in not seeking to enforce it. Further, defendant cannot prove that counsel's failure to "follow through" with the agreement resulted in prejudice. Doc. #2362 at 7. At sentencing, defendant and counsel asked the Court to enforce the oral agreement or, in the alternative, to reduce the sentence to "the equivalency of time" that defendant would have served under the agreement. Doc. #2240 at 35-43. The Court rejected these arguments and found that enforcing the alleged agreement would not be consistent with the plea agreement. Id. at 42-43. Thus, even if the Court presumes that counsel performed deficiently because he failed to seek enforcement of the agreement, his error did not result in prejudice. The Court overrules this claim of ineffective assistance.

C.     Objections To Use Of Proffered Statements (Claims 3, 4 and 12)

Defendant asserts that counsel provided ineffective assistance because he failed to object to the proffer agreement as a coerced confession (Claim 3); he failed to object to the conviction and sentence on self-incrimination grounds (Claim 4) and he failed to effectively challenge the government's use of defendant's proffer statements in seeking a four-level sentence enhancement as a leader or organizer under U.S.S.G. § 3B1.1(a) (Claim 12). See Doc. #2362 at 8-9.

Defendant bases these claims on the invalid factual premise that the government used his proffer against him. At sentencing, Ross argued that the government violated the proffer agreement by using his statements against him. Doc. #2240 at 5-15. The Court overruled this argument because it found that the government relied on evidence other than defendant's proffer statements

– witness statements and intercepted telephone calls that the government had obtained independent of the proffer. Id. at 21; Doc. #2058, ¶ 478. Because the government relied on independent evidence, defendant cannot show deficient performance or prejudice as to his claims related to the proffer agreement. Thus, the Court denies defendant's request for relief on these grounds.

### D. Failure To Protect Defendant's Speedy Trial Rights (Claim 5)

Defendant argues that Ross provided ineffective assistance because he failed to protect his speedy trial rights. Doc. #2362 at 10. Defendant claims that the delay between his guilty plea and sentencing violated his speedy trial rights. Id. The Court accepted his guilty plea on March 6, 2013, Doc. #881, and sentenced him on November 17, 2015. Doc. #2206. Defendant asserts that counsel's inaction during this period caused him prejudice.

Supreme Court precedent belies defendant's claim. It recently held that the speedy trial guarantee only applies from arrest or indictment to conviction – not between conviction and sentencing. Betterman v. Montana, 136 S. Ct. 1609, 1612 (2016); see also Perez v. Sullivan, 793 F.2d 249, 256 (10th Cir. 1986) (analysis focuses on prejudice, not length of delay, for post-conviction delays). Additionally, defendant fails to explain how the delay prejudiced him. The Court denies relief on this claim.

### E. Withdrawal Of Defendant's Appeal (Claim 8)

Defendant contends that Ross provided ineffective assistance because he advised him to withdraw his appeal. Doc. #2362 at 13. Defendant asserts that Ross promised defendant and his family that he would arrange legal representation for an appeal. Id. On December 1, 2015, Ross filed a notice of appeal of the Court's judgment, order and sentence. Notice Of Appeal To 10CCA (Doc. #2216). Ross later advised defendant to withdraw his appeal because it violated his plea agreement. Doc. #2362 at 13. On January 27, 2016, Ross told defendant to sign a voluntary

dismissal which stated that he "elect[ed] to withdraw the appeal." See Voluntary Dismissal Doc. #2380, attachment #1. Defendant signed the voluntary dismissal, withdrawing his appeal.

Because defendant had waived his right to appeal the sentence in the plea agreement, Ross had good reasons to advise him to withdraw his appeal. Doc. #882, ¶ 14. The government could have pursued a longer sentence if defendant violated his plea agreement. Fisher v. Shillinger, No. 93-8112, 1994 WL 209870 at *2 (10th Cir. May 26, 1994). Thus, counsel did not perform deficiently. Even if the Court presumes that counsel somehow provided deficient advice with respect to withdrawing the notice of appeal, defendant fails to demonstrate any prejudice. Defendant has not shown that he had meritorious grounds for appeal. The Court denies relief on this ground.

F. Failure To Secure Release On Bond (Claim 9)

Defendant asserts that because counsel failed to secure his release on bond, he provided ineffective assistance. Doc. #2362 at 14. On June 13, 2012, the government sought pretrial detention. Minute Entry (Doc. #25). Five days later, defendant waived his right to a detention hearing and admitted he had been advised of his bail rights. Waiver Of Preliminary Hearing (Doc. #102) filed June 18, 2012. Defendant presents no evidence to rebut the presumption that he knowingly and voluntarily waived his rights. Defendant has not alleged sufficient facts to establish that counsel performed deficiently or that counsel's performance resulted in prejudice. The Court denies relief on this ground.

G. Coercion To Sign Plea Agreement (Claim 10)

Defendant argues that Ross coerced him to plead guilty by misrepresenting the terms of the plea agreement and thus provided ineffective assistance. Doc. #2362 at 15. In particular, defendant asserts that counsel told him before he signed the plea agreement that the government would move to withdraw his plea under Section 924(c) at sentencing. Id. In his written plea agreement and the

plea colloquy, defendant affirmed under oath that he had discussed the plea agreement with counsel, that no one had forced or threatened him to plead guilty and that no promises were made to induce him to plead guilty. The accuracy and truth of his statements at a Rule 11 proceeding at which the Court accepts his plea are conclusively established. United States v. Glass, 66 F. App'x 808, 810 (10th Cir. 2003). Defendant's previous sworn statements refute his conclusory statement that counsel deliberately deceived him to get him to plead guilty. Thus, the Court denies relief on this claim.

### H. Failure To Object To Unlawfully Obtained Evidence (Claim 11)

Defendant argues that Ross provided ineffective assistance because he did not object to unlawfully obtained evidence used against him at sentencing. Doc. #2362 at 16. On June 15, 2012, defendant gave law enforcement consent to search his parents' house for firearms, drugs and drug proceeds. Defendant now asserts that law enforcement violated his parents' Fourth Amendment rights because they failed to obtain a search warrant before searching their home. He contends that counsel provided ineffective assistance by failing to object when the government referenced the firearms and drug proceeds at sentencing.

Because Fourth Amendment rights may not be vicariously asserted, Supreme Court precedent belies defendant's claim. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). In other words, defendant cannot object to a search of his parents' property because that search did not violate his personal Fourth Amendment rights. Id. The Court would have overruled counsel's objection on this ground because defendant cannot vicariously assert his parents' rights. Thus, defendant cannot demonstrate that counsel's failure to object was deficient or resulted in prejudice. The Court denies relief on this ground.

I.  Plea Agreement's Forfeiture Amount (Claim 13)

Defendant asserts that because counsel allowed the government to amend the plea agreement to include additional forfeiture provisions, he provided ineffective assistance. Doc. #2362 at 5. As part of his plea agreement, defendant agreed to forfeit $16,985,250.00 and real and personal property enumerated in the plea agreement. Doc. #882, ¶ 2. In addition to the enumerated forfeitures, defendant agreed to "fully and completely assist the United States in the identification and recovery of forfeitable assets . . . which have been acquired directly or indirectly through the unlawful activities of the defendant." Id., ¶ 7(d). Shortly after sentencing, the government and defendant entered into an additional "Forfeiture Agreement," in which defendant agreed to forfeit an additional $84,700 and contraband. Doc. #2345. Defendant argues that this agreement amended the plea agreement and that counsel should have resisted it.

Under the plea agreement, defendant agreed to assist the government in recovery of all forfeitable assets. The subsequent forfeiture agreement did not amend the plea agreement; rather, it enforced the original terms of the plea agreement. Defendant has not shown that Ross had a legal or factual basis to object to the specific forfeitures outlined in the supplemental agreement. Counsel's performance was within the range of reasonable professional assistance and did not prejudice defendant. Accordingly, the Court denies relief on this ground.

J.  Failure To Receive Sentence From AUSA Warner (Claim 14)

Defendant argues that by failing to get him sentenced while AUSA Warner briefly replaced AUSA Terra Morehead as lead prosecutor on this case, counsel provided ineffective assistance. Doc. #2362 at 6. From early September until late October of 2013, AUSA Warner replaced AUSA Morehead as prosecuting attorney on defendant's case. Withdrawal Of Counsel (Doc. #1019) filed September 9, 2013; Notice Of Withdrawal Of Appearance (Doc. #1086) filed October 30, 2013.

Defendant alleges that he asked Ross to get him sentenced during this time, but counsel failed to do so. Doc. #2362 at 6.

A defense attorney does not have the authority to dictate when the Court sentences his client. Ross's failure to complete a task beyond his capacity does not constitute objectively unreasonable performance. Further, defendant's conclusory claim that he "should have been allowed . . . to take advantage of the situation" does not prove prejudice. Id. Defendant has not shown that Ross had reason to know that Warner's assignment would be temporary, and the record contains no evidence that his replacement materially impacted the sentence. While defendant may believe he could have received a more lenient sentence if AUSA Warner had handled the sentencing, any such belief is purely speculative because all prosecuting attorneys are subject to the same guidelines and obligations. See generally United States Attorney's Manual Tit. 9 §§ 27.400, 27.730 (1997). On this record, defendant has not shown a reasonable likelihood that he would have received a different sentence if the proceedings had been conducted during Warner's tenure as lead prosecutor. Thus, the Court denies relief on this ground.

### K. Advice To Sign Plea Before Discovery Complete (Claim 15)

Defendant asserts that counsel provided ineffective assistance because he advised him to sign a plea agreement before discovery concluded. Doc. #2362 at 6. In particular, defendant alleges that counsel never read nor reviewed the facts of his case before advising him to accept the government's plea agreement. Defendant fails to support his allegation with any evidence. Also, even if defendant produced evidence to establish deficient performance, he fails to allege prejudice, i.e., that he would not have agreed to the plea agreement or that he later would have received a more favorable plea agreement, if Ross had not advised him to sign the agreement before discovery concluded. See United States v. Young, 206 F. App'x 779, 785 (10th Cir. 2006). Defendant fails to identify any

-14-

potentially exculpatory evidence that would have altered the plea negotiations. United States v. Ramirez, 117 F. App'x 901, 903 (5th Cir. 2004) (no prejudice when fail to allege completed discovery would change result of proceedings). The Court denies relief on this ground.

### III. Prosecutorial Misconduct Claims (Claims 6, 7 and 16)[2]

Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of so infected proceedings with unfairness as to make defendant's conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also United States v. Anaya, 727 F.3d 1043, 1052 (10th Cir. 2013) (prosecutorial misconduct violates due process if it denies right to fair trial).

#### A. Government Violated The Plea Agreement (Claim 6)

Defendant argues that the government violated the plea agreement because when he testified as a government witness at a co-defendant's trial, the prosecutor asked him questions beyond the agreed-upon factual basis in his plea agreement. Doc. #2362 at 11; Doc. #882, attachment B. In the plea agreement, the government and defendant agreed on the factual basis for his guilty plea. Doc. #882, ¶ 3. These facts were represented in an attachment to the agreement. Id. The "Factual Basis" attachment lists guns that investigators found in defendant's bedroom and that formed the basis for his Section 924(c) conviction. Doc. #882, attachment B at 19. Defendant now alleges that while he was testifying as a government witness at a co-defendant's trial, the government violated the plea agreement by asking him about additional guns and contraband in his garage. Doc. #2362 at 11.

---

[2] The government's response incorrectly states that the "defendant waived any right to appeal or collaterally attack any matter in connection with his prosecution." Doc. #2380 at 20. For reasons stated above, supra Part I.a, the Court overrules the government's request to enforce the waiver of collateral attacks as to defendant's claims of prosecutorial misconduct.

Defendant misconstrues the terms of the plea agreement. The agreed-upon factual basis constituted the basis for the "offense[s] to which the defendant [was] pleading guilty." Doc. #882, ¶ 3. Defendant does not allege that the government used his trial testimony concerning the additional contraband to increase his sentence or that said testimony prejudiced him in any way. The Court convicted and sentenced defendant based on the conduct which he admitted in his plea agreement. Additionally, even if defendant's trial testimony prejudiced him in some way, the plea agreement did not limit the government to the facts set forth in the "Factual Basis" attachment. The attachment – which is incorporated in the plea agreement – explicitly states that it "does not contain every fact or detail of this investigation . . . [and] it in no way represents every facet of each conspirators involvement in the conspiracy." Doc. #882, attachment B at 1 n.1. Accordingly, the plea agreement did not prevent the government from questioning defendant about facts outside of the "Factual Basis." The Court denies relief on this ground.

B.    Selective Prosecution (Claim 7)

Defendant argues that the government engaged in selective prosecution because the government prosecuted him under Section 924(c) and did not convict other co-defendants under Section 924(c). Doc. #2362 at 12. In short, defendant claims that the government had ample evidence to charge co-defendants under Section 924(c) but decided against it. For example, he asserts that the government should not have dismissed its Section 924(c) charge against co-defendant Troy Percival because he also had guns that he used "to protect his drugs." Doc. #2384 at 6.

To succeed on his selective prosecution claim, defendant must meet a "demanding" standard. United States v. Armstrong, 517 U.S. 456, 463 (1996). Defendant must prove that the government prosecuted his case with (1) a discriminatory motive which caused (2) a discriminatory effect. United States v. McCalister, 643 F. App'x 682, 685 (10th Cir. 2016). The Court presumes that

prosecutors do not violate the constitution; thus, to prevail on his claim, defendant must present "clear evidence to the contrary." Armstrong, 517 U.S. at 465. Here, defendant does not allege that the government prosecuted him with a discriminatory motive, such as mistreatment based on race or religion. The government states that it charged defendant under Section 924(c) as well because it determined that he was more culpable for the overall conspiracy than co-defendants whom the prosecutors could have also charged. Doc. #2380 at 21. In reply, defendant tacitly accepts this explanation. Doc. #2384 at 6 (government "selective" because it based charges on "'culpability' in the overall conspiracy"). The Court denies relief on this ground because defendant has not presented evidence of discriminatory motive.

      C.      Government Failed To Follow Through On A Binding Contract (Claim 16)

Defendant argues that by failing to follow through on an oral contract, AUSA Maag engaged in prosecutorial misconduct. Doc. #2362 at 7. As discussed above, defendant alleges that he entered into an oral contract with AUSA Maag to have the government move to withdraw his guilty plea under Section 924(c) in exchange for a two-point enhancement on the conspiracy conviction (Count 1). The government denies that this agreement existed and states that Department of Justice policy requires all government agreements be reduced to writing. Doc. #2380 at 16-17. In any event, the Court found the alleged agreement could not be enforced at sentencing because it violated the plea agreement. Doc. #2240 at 42-43. Defendant fails to show how the government's failure to seek enforcement of the agreement affected his conviction or sentence or infected the proceedings with unfairness that amounted to a denial of due process. Donnelly, 416 U.S. at 643. Accordingly, he has not proven prosecutorial misconduct. The Court denies relief on this ground.

**Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

**Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[3] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

---

[3] The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

**IT IS THEREFORE ORDERED** that defendant's Motion To Vacate Under 28 U.S.C. § 2255 (Doc. #2362) filed October 24, 2016 is **OVERRULED.**

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

Dated this 16th day of October, 2017 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge